IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:09-CR-0380-03 |
| v. | : | (Judge Conner) |
| RICARDO PRECIADO-RODRIQUEZ | : | |

**MEMORANDUM**

Presently before the court is a motion to suppress (Doc. 338), filed by counsel for defendant Ricardo Preciado-Rodriquez (Rodriguez), wherein Rodriguez seeks to suppress evidence found at his residence during the execution of a search warrant issued by a state-court judge. Rodriguez argues that the affidavit upon which the search warrant was issued failed to establish probable cause, making the subsequent search a violation of his Fourth Amendment rights. For the reasons that follow, the court will deny the motion.

I. **Background**

On September 9, 2009, Franklin County District Attorney's Office personnel obtained and executed a search warrant for Rodriguez's residence in Franklin County. (Doc. 338-1, at 1.) Judge Richard Wald of the Pennsylvania Court of Common Pleas signed the search warrant, which authorized the search of Rodriguez's residence for "[f]irearms, monies from the sale of firearms and any records associated with the illegal sale or distribution of firearms." (Id.) The supporting affidavit based its finding of probable cause on "[a]n illegal firearm sale [that] was conducted at the residence." (Id. at 2, 3 ¶ 6).

On November 18, 2009, a grand jury in the Middle District of Pennsylvania issued an indictment charging Rodriguez and others with conspiracy to distribute (and the actual distribution of) over a hundred kilograms of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1), respectively. (Doc. 1.) Rodriguez entered a plea of not guilty in January 2010. (Doc. 83). A grand jury issued a superseding indictment in October 2011, which amended the counts from the 2009 to include charges of conspiracy and distribution of at least five kilograms of cocaine. (Doc. 315, at 1–2.) The superseding indictment also added two further counts: Count III charges Rodriguez with possessing a firearm while an illegal alien, a violation of 18 U.S.C. § 922(g), and Count IV charges him with possessing a firearm in furtherance of a drug-trafficking crime, a violation of id. § 924(c)(1)(A). (Doc. 315, at 3–4.) Rodriguez subsequently entered a plea of not guilty. (Doc. 324.)

Rodriguez filed the instant motion to suppress (Doc. 338) on February 20, 2012; briefs in support and in opposition (Docs. 339, 349) have also been filed. A hearing had been scheduled on the motion (see Doc. 344), but when it became apparent that the motion's sole argument was the absence of probable cause in the affidavit supporting the September 2009 search warrant, it was evident that a hearing would serve no purpose.[1] The motion, being fully briefed, is ripe for disposition.

---

[1] Testimony cannot correct, clarify, expand, or explain the contents of an affidavit. See United States v. Sterling, 369 F.2d 799, 802 n.2 ("The affidavit must be the exclusive support for the warrant.").

## II. Discussion

Rodriguez sets forth two arguments in support of his motion: (1) the affidavit supporting the search warrant failed to establish probable cause because it alleged only an illegal sale, but no information that the alleged sale violated state or federal law; and (2) the affidavit "was so lacking in indicia of probable cause" that it was "entirely unreasonable" for officers to believe that probable cause existed. (Doc. 338, ¶¶ 3-5.) Each argument will be addressed in turn.

### A. Probable Cause

A magistrate (or judge) whose authorization is requested for issuance of a warrant has a well-defined task: "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983) (internal quotation marks omitted). As the question the magistrate must answer is only whether the affidavit establishes probable cause, "[f]inely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the magistrate's decision." Id. at 235. Similarly, a valid finding of probable cause does not require that the affidavit make a prima facie showing of criminal activity. Id. (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969), abrogated on other grounds by Gates).

A reviewing court has the duty "simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id. at 238–39 (alterations in original) (quoting Jones v. United States, 326 U.S. 257, 271 (1960), overruled on other grounds by United States v. Salvucci, 448 U.S. 83, 84–85 (1980)); accord United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000) (quoting Gates, 462 U.S. at 238). Such a review is far from de novo; it entails affording "great deference" to the magistrate's assessment of probable cause while giving the affidavit its "most reasonable reading." Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969), abrogated on other grounds by Gates); United States v. Williams, 3 F.3d 69, 72 (3d Cir. 1993).

In the instant matter, Rodriguez characterizes Judge Wald's probable-cause determination as "based entirely on the allegation that [Rodriguez] illegally sold a firearm at the residence earlier that day." (Doc. 339, at 3; see also Doc. 338-1 at 3 ¶ 6 (containing the affiant's assertion of an illegal firearm sale).) Were this characterization based on a fair reading of the affidavit—that is, were the affidavit a mere "bare bones" recital of conclusions and allegations of illegal activity—Rodriguez's argument would surely be successful. See Gates, 462 U.S. at 239 (noting that such "bare bones" affidavits categorically fail to support a probable-cause finding). However, Rodriguez appears to have read the affidavit while fettered with blinders, his scope of vision narrowed to a couple of sentences contained within two pages of detailed information that provide context and support for the affiant's assertion —and Judge Wald's conclusion—that probable cause existed for a warrant to issue.

4

1. **The Affidavit**

The affidavit begins by identifying the affiant as a detective employed by the Franklin County District Attorney's Office and assigned to the Franklin County Drug Task Force. (Doc. 338-1, at 2 ¶ 1.) The detective states that he has been a police officer for eleven years and involved in law enforcement for fourteen years. (Id.) Before his employment with the District Attorney's office, he conducted drug investigations for four years as a patrolman with police departments in the area. (Id.) He describes his experience collecting intelligence about drug dealers and drug activity, conducting surveillance in drug investigations, working undercover purchasing drugs, and overseeing investigations as case manager, and training that he had received from numerous state and federal agencies. (Id.)

The detective then describes a meeting with a confidential informant (CI), who reported that a Hispanic male known as "Amigo" had an AR-15 rifle that he wanted to sell for $400. (Id. at 2 ¶ 2.) The CI also mentioned having purchased cocaine from Amigo and knowing others that had, too, and suggested that a purchase of cocaine might be made from Amigo at the same time as the rifle. (Id.) According to the affidavit, the CI's information about a Hispanic male selling cocaine in the area corroborated with information that the detective and his partner received from other informants. One CI provided the detective with a registration number for the truck that Amigo drove; the registration indicated that the truck was owned by Tiffany Preciado of 7170 Lincoln Way West in St. Thomas, Pennsylvania. (Id.)

5

The remainder of the affidavit is largely devoted to a description of the CI's purchase of the rifle and an unspecified quantity of cocaine, along with the events leading up to and following these purchases. Before the CI placed a recorded call to Amigo seeking to purchase the rifle and cocaine, the CI's person and vehicle were searched for money and contraband with negative results. (Id. at 2 ¶ 3.) During the call, Amigo said he had no cocaine at the time but would in another hour and a half. (Id.) As to the gun, Amigo said it was available for purchase; he and the CI agreed to speak again when the CI was closer to the area. (Id.) During a second recorded phone call, the CI was directed by Amigo to a meeting point; following the rendezvous, Amigo led the CI, with the detective following, to 7170 Lincoln Way West. (Id.) The CI remained outside while Amigo went into the residence; Amigo returned with the rifle and sold it to the CI for $400 while they stood in the parking area of the residence. (Id.) Following the sale, the CI met the detective and his partner at a predetermined location and turned over a Colt Mfg. .223 caliber rifle to the detective, stating it was purchased from Amigo. (Id.)

Some while later, the CI reported to the detective that Amigo had cocaine for sale. (Id. at 3 ¶ 5.) After the CI was once again searched for contraband and money with negative results, the detective gave the CI "a quantity of U.S. currency," and after a series of communications and coordinating efforts, the CI and Amigo were observed by surveillance officers entering a barn at the rear of 1465 Warm Spring Road. (Id.) The CI subsequently met up with the detective and turned over a quantity of cocaine to the detective, stating that it was purchased from Amigo in the

barn, and further relating that Amigo had said that he receives half a kilogram of cocaine per week. (Id.) The CI also remarked having seen scales for weighing cocaine and packaging materials in the barn (Id.) The suspected cocaine field-tested positive for the presence of cocaine. (Id.)

Only after all of the foregoing was reported in the affidavit did the affiant (1) state his belief that probable cause existed to search the residence at 7170 Lincoln Way West and the barn to the rear of 1465 Warm Spring Road and (2) describe the sale of the rifle as an "illegal firearm sale." (Id. at 3 ¶ 6.)

### 2. **The Warrant**

The warrant authorized the search of 7170 Lincoln Way West for "[f]irearms, monies from the sales of firearms and any records associated with the illegal sale or distribution of firearms." (Doc. 338-1, at 2.) It identified 18 Pa. Cons. Stat. Ann. § 6111(g)(1) as the law for which there was probable cause to believe a violation had occurred, evidence of which was fairly probable to be found at 7170 Lincoln Way West. (Id.) Section 6111(g) makes it a misdemeanor of the second degree for any person to sell a firearm in violation of the other provisions of section 6111, the numerous specific requirements of which include that a seller deliver a firearm "securely wrapped" and unloaded, id. § 6111(a); that a seller, if licensed, complete detailed records and forms relating to the sale, id. § 6111(b)(1), inspect a government-issued identification card of the buyer, id. § 6111(b)(2), request via a telephone call that the Pennsylvania State Police (PSP) conduct a background check on the buyer, id. § 6111(b)(3), and receive a unique approval number for the

background-check inquiry from the PSP and record that number and the date on the paperwork regarding the sale, id. § 6111(b)(4); and that a seller, if unlicensed, must conduct the sale only on the premises of a licensed importer, manufacturer, dealer, or county sheriff's office, id. § 6111(c).

The meticulously detailed affidavit does not include a description of any facts that would suggest that the alleged sale took place in compliance with section 6111. To the contrary, the affidavit describes a sale occurring in the parking area of a private residence, such sale taking place only after the seller had met the buyer elsewhere and then taken the buyer to the residence where the sale was completed. The buyer waited outside while the seller went indoors to retrieve the rifle, which was promptly tendered to the buyer in exchange for $400 cash. The affidavit conspicuously omits any mention of the completion of the paperwork that section 6111 requires, any inspection by the seller of the buyer's government-issued identification, or any facts that would suggest a background check was conducted and approval received from the PSP. These inclusions and omissions, coupled with the indicia of the affiant's trustworthiness set forth in paragraph 1 of the affidavit, were sufficient to allow Judge Wald "to make a practical, common-sense decision" that the affidavit described facts indicating a fair probability that 18 Pa. Cons. Stat. Ann. § 6111(g)(1) had been violated. Indeed, the affidavit describes a fairly typical clandestine sale, and Judge Wald's determination that the residence outside of which the rifle sale took place would contain evidence of a violation of section 6111(g)(1) had an entirely substantial basis.

Even if the facts described in the affidavit regarding the sale of the rifle fail to provide a substantial basis for Judge Wald's finding of probable cause and issuance of the search warrant, the affidavit also describes in detail the acquisition and sale of cocaine by the same person who sold the rifle. Unlike the sale of a rifle, which is perfectly legal when the applicable laws are followed, obtaining and selling cocaine are plainly illegal criminal activities. That the same person was, on the one hand, obtaining and selling cocaine at a rate of roughly a pound per week, and on the other hand, selling a rifle in a parking lot, lends further support to a common-sense conclusion that the sale of the rifle did not comply with the applicable state laws.

Rodriguez objects that the affidavit "does not allege any facts, for example, that [Rodriguez] was a prohibited possessor under 18 U.S.C. § 922(g), that [the] firearm involved was an illegal weapon, or that he failed to comply with applicable record-keeping requirements." (Doc. 339, at 4.) However, Fourth Amendment jurisprudence imposes no such requirements upon an affidavit. Quite the opposite: long-standing case law makes it explicitly clear that a valid finding of probable cause does not require that the affidavit make a prima facie showing of criminal activity. Illinois v. Gates, 462 U.S. 213, 235 (1983) (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969), abrogated on other grounds by Gates). Rodriguez's objections to the affidavit are apparently predicated on the belief that an affidavit *should* make such a prima facie showing, but such a belief flies in the face of explicit statements of the United States Supreme Court that date back more than forty years. Overturning Judge Wald's finding of probable cause would require this court

9

to abandon its duty to give "great deference" to his assessment of probable cause, to ignore the mandate that the affidavit be given its most reasonable reading, and to flout the dictates of the highest federal court in the United States. Id. at 235, 236; United States v. Williams, 3 F.3d 69, 72 (3d Cir. 1993).

Because there was a substantial basis for Judge Wald to conclude that probable cause existed, Rodriguez's motion to suppress will be denied.

**B.      Good Faith Exception**

Assuming *arguendo* that no substantial basis existed for Judge Wald to have found probable cause, Rodriguez would need to establish the inapplicability of the "good faith" exception to the exclusionary rule in order to succeed on his motion to suppress.[2] See United States v. Leon, 468 U.S. 897, 920 (1984) ("[W]hen an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," there is usually "no police illegality and thus nothing to deter.").

To determine whether the "good faith" exception applies, the court must ask "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. $92,422.57, 307 F.3d

---

[2] The exclusionary rule was intended to deter unlawful police conduct; however, the rule had the added effect of allowing "some guilty defendants [to] go free or receive reduced sentences." Leon, 468 U.S. at 906–07. As a result, the United States Supreme Court crafted the "good faith" exception, recognizing that law enforcement officers who act in the good faith belief that their conduct does not violate the Fourth Amendment need not be deterred. United States v. $92,422.57, 307 F.3d 137, 145 (3d Cir. 2002); see also Leon, 468 U.S. at 922–25.

137, 145 (3d Cir. 2002). The fact that a search was conducted pursuant to a warrant typically "suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." Id. at 146. There are, however, four exceptions in which an officer's reliance on a warrant is not reasonable:

> (1)   when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> (2)   when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function;
>
> (3)   when the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;' or
>
> (4)   when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

Id. (quoting United States v. Hodge, 246 F.3d 301, 308 (3d Cir. 2001)).

Rodriguez argues that reliance on the warrant was unreasonable because of exception (3) above—that the affidavit so lacked indicia of probable cause as to render official belief in its existence entirely unreasonable. As the Supreme Court recently stated, "the threshold for establishing this exception is a high one, and it should be." Messerschmidt v. Millender, No. 10-704, 565 U.S. ___, slip op. at 10 (Feb. 22, 2012) (dicta). All that an affidavit need be is more than a "'bare bones' document based on conclusory, unsupported statements" to overcome an argument that official reliance was entirely unreasonable. See United States v. Mortimer, 387 F. App'x 138, 142 (3d Cir. 2005) (citing United States v. Loy, 191 F.3d 360, 368 (3d Cir. 1999)) (rejecting an argument that the good-faith exception did not apply when the affidavit in question was "unquestionably" more than a bare-bones document). As

11

Part II.A.1 supra explicates, the affidavit in the instant matter is rich in factual detail and meticulous in its reporting of relevant events. It is unquestionably more than a bare-bones document. Even if the search warrant were defective for lack of probable cause, the officers who executed it would still have been acting in good faith by doing so. See United States v. $92,422.57, 307 F.3d 137, 147 (3d Cir. 2002) (holding an affidavit to have made a substantial showing of probable cause when it "provided great detail" about a money-laundering scheme, including specific statements about funds that flowed to the business whose records the search warrant authorized officers to seize).

### III. Conclusion

For the foregoing reasons, the court will deny Rodriguez's motion to suppress. An appropriate order will issue.

      S/ Christopher C. Conner
    CHRISTOPHER C. CONNER
    United States District Judge

Dated:    March 28, 2012

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:09-CR-0380-03** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **RICARDO PRECIADO-RODRIQUEZ** | : | |
| | : | |

## **ORDER**

AND NOW, this 28th day of March, 2012, upon consideration of defendant's motion to suppress (Doc. 338), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion to suppress (Doc. 338) is DENIED.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge